May it please the Court, good morning. My name is Andrew Freifeld. I'm appearing on behalf of Timothy Martinez. I did not represent Mr. Martinez below. Turning to the issue of venue, which are the first two points in our brief, the only evidence to support venue is circumstantial. There's no evidence, direct evidence, that my client was in the Eastern District of New York at the time that he committed any act in further support of the offense. Well, that depends on what you mean by any act in further of the offense. Why is that? I don't want to be asking questions. I'm not aware of any act. Well, let me put it to you this way. Yes. Was it not true that in the chat transcripts with Jane Doe, too, at one point in March of 2017, she says something like, Are you away or are you deployed or something? And he says, No, I'm home. And would that not be permissible for the jury to infer, given that he had signed a lease for a new place in Staten Island in February of 2017, that when he said, I'm home, he meant I'm in Staten Island? Now, you may dispute whether that is in furtherance of the offense, but it certainly would be a permissible inference that when he made that statement to Jane Doe, too, the jury was permitted to infer by preponderance of the evidence that that meant he was admitting he was in Staten Island. While that may be true, according to the indictment, the charges regarding Jane Doe, too, ended in 2016. Fair enough. Fair enough. Okay. And just to move forward, the dates for Jane Doe 1 included dates in March 2017, correct? In the indictment. In the indictment. Yes, it does claim March 2017. No, I'm just extrapolating back. So there's a piece of evidence with respect to Jane Doe 1 that he was at home in Staten Island in March of 2017. If we were to then conclude that his communications with Jane Doe 1, including the ones where he specifically and explicitly asked her to engage in sexual conduct, or even when he doesn't, is part of a continuous stream of conduct that is meant to induce her or persuade her to continue to send him naked pictures of her, then we would have proof of venue for the conduct with respect to Jane Doe 1. Let's just stop there. I mean, would you agree? Now, that's an if. No, I don't agree. Okay, so yeah, perfect. So explain why that's not true. If he just said to her happy birthday and he said nothing more during the course of the chat, I don't understand how you can make the logical inference that he's trying to induce her to engage in sexually explicit conduct based on a happy birthday. So then what if the jury were to conclude that the only reason this guy, this grownup, is having a series of chats by video and Skype with this underage girl is because he is trying to get her to continually send him a stream of pictures. And part of the way he does that is through grooming. So sometimes he's out front and he says, you know, take your clothes off, show me these things. And then other times he's engaging in really nothing more than thinly veiled sexually charged conduct. And I don't even want to say these things out loud. And then sometimes, again, to build a relationship of trust, he says things like, how are you doing? You know, I'll be the ear who listens to you. Why could a jury not conclude that that was a continuous stream of grooming that was specifically intended to build a relationship so he could get what he wanted, which was naked pictures of her, and that the indictment charged him, and here's what's key, not just with persuading, enticing, inducing, but also attempting to do so. Okay. I don't see attempt in the indictment. That I recall. I don't recall seeing the word attempt. Are you saying it's not in there? Because I may be wrong. I thought I saw it in there. I'm not saying it's not in there. I don't recall it being there. Well, that actually could be relevant. Is your basic argument that if there was any grooming with respect to count one, window one, that happened after the grooming with respect to her in the eastern district, in the venue district, was after the event for which your client is charged? Yes. And, therefore, there is no venue. Yes. But that's the difference. In part, yes. That is what I'm saying. Well, then, can we look at – I'd like you to look at page 827. Tell me whether I'm looking at the wrong document. It's a superseding indictment. I think this is the operative charging document, but tell me if it's not. You say 827. Page 27. 827. I'm sorry. Yeah, I'm sorry. A is in Apple. Pardon me. Appendix volume one. Counts one and two. Okay. One, two, three, four, and the fourth line down. So it says, honor about the dates. He did knowingly, intentionally employ, use, persuade, induce, entice, and coerce a minor, and attempt to do so. It says that. So the first question is, do you agree that this is the operative charging document? Yes. Okay. So I'm not looking at the wrong document. And the second question is, do you agree that he was charged not only with persuading, but or induce? It says it. I don't accept that. Okay. So why is it that even though attempt is written in the indictment, you are telling me he was not charged with attempt? It's not a continuing offense. No, no, no, no. Different question. Okay. I didn't ask whether it's a continuing offense. I asked whether he is charged with attempt. Yes. It says that in the indictment. I can't deny it. Okay. So was the jury entitled to determine whether, and you can tell me why it didn't, determine whether even after the victim stopped sending him pictures, depictions, whether subsequent conversations between him and the child could or could not be considered attempts by him? Now, you can tell me why particular conversations like, hello, how are you doing, are not in fact attempts. Yes. But you're not telling me that after the depictions, the last one was sent, as a matter of law, he could not have been attempting something just because he never got a picture in return. I mean, if he had said, please send me a picture, and she said no, you would agree that's an attempt, right? Yes. Okay. So then you would agree that the jury was entitled to determine whether his subsequent communications with her were in fact attempts. Now, you can tell me there's not sufficient evidence that they were attempts, but do you agree that they were entitled to ask whether they were attempts that followed? If I may. Yes. One missing fact, perhaps, is that I don't know that the word attempt was in the jury instruction. So although it may have been in the indictment, if it wasn't in the jury instruction, then the answer is no. You don't know? I don't know offhand. I didn't know about the indictment. I don't know offhand about the instruction. But as I recall, the government set out the instruction, if my memory is correct, inside of there. Was the jury read the indictment as part of the – was the jury read the indictment? I'm sorry, Judge. I don't recall. Let me ask you this. Let's – you don't gainsay that venue can be proved by circumstantial evidence. I do. I concede that venue can be proved by circumstantial evidence. And wasn't there – I don't understand the contention then that this circumstantial evidence was insufficient, particularly since we're dealing with the preponderance standard. They found the laptops in his house, pictures on the laptop. As Judge Nardini said, he conceded in one of the calls that he was at home, lived in Staten Island. Okay. The fact that the laptops were discovered at his home in Staten Island does not speak at all to counts one and two. Zero. Because they only – that fact only speaks to venue under count three and four. All of the charges that are set forth, all of the dates in counts one and two that are set forth, are long before the search warrant was executed and the computers were discovered at his house. So the circumstantial evidence that is whether or not at the time of the time period that was charged in the indictment, whether there's adequate circumstantial evidence that he lived in Staten Island. And there is not, which I'd like to address, if you'll allow me. What you have to be arguing is the question of whether there was a continuous offense. That is, I have problem with venue with respect to Jane Doe I because it seems to me the only offense took place before there's any evidence of his being in Staten Island. I have less problem with Jane Doe II because it seems to me that some of the things that she did were after. And so as to that, there's circumstantial evidence. But as to Jane Doe I, the real question is was this a continuous offense that he was found, in which case some of the things of a grooming took place after, but some did while the offense was still going on. But if instead the offense was that initial sending, then I think you have a strong argument. Am I misunderstanding? I agree with you, except with respect to Jane Doe II. Let me try to hit the nail on the head. There are two items of evidence on which the government can here rely to show proper venue under Counts 1 and 2. The first is Martinez's one-page passport application dated July 27, 2011, which is at A870 and reflects an address on Seaview Avenue in Staten Island. The second is a one-page document produced by Time Warner Cable, which is at A867, which shows that Martinez's Internet service at an address on Bay Terrace in Staten Island was activated on February 3, 2017. That's a six-year gap between the two pieces of evidence showing that he lived in Staten Island. Hang on. I thought that he called a witness, a friend of his from military service, who said she visited him on a number of occasions there in Staten Island. It was the male witness who he called who said that. Yes, but they never asked him what those dates were. Hang on. I thought there was also evidence that he, Martinez, was in contact with Jane Doe on a near monthly basis. Was that not correct? Which Jane Doe? Jane Doe II, I'm sorry. Jane Doe II so testified. Yes. So if we have testimony that he did live at some point in Staten Island, we do have testimony from one of his own witnesses who said, yeah, I would go visit him there, and he lived there. And we have testimony from the victim that this was a regular, ongoing thing of near monthly contact. Why could the jury not reasonably infer that this continuous stream of contact included some communications while he was at home? Because there's no evidence that he lived on Staten Island between 2011 and 2017. The witness who testified that he visited them there regularly, he never testified as to when that occurred. And the government could have asked him that. It could have occurred at the end of 2017. It could have occurred all during 2018. It could have occurred in 2019. All of that period postdated the dates that he's charged in the indictment under counts one and two. The government could have said to that witness, when exactly did you visit him, and that problem would have been solved. My argument to you is that since they never asked him that, it's as likely that those visits occurred at the end of 2017, 2018, and 2019, as it is that they occurred during the period that's charged in the indictment. Second, with respect to what Your Honor said, there's no evidence that he lived there between 2011 and 2017. So he could have lived in Manhattan that entire time. So even if he was contacting her every month as the witness testified, there's no evidence that he was in the Eastern District at the time that he had that contact. If I could make two other points briefly, please. Yeah, why don't you go ahead and let's get it to two minutes, though. Okay. Two more minutes. We'll give you a little extra time. Thanks. Judge, the crime that he committed was observing live transmissions of the minors engaging in sexually explicit conflict. There's no evidence that he ever asked them to send him a picture or any type of permanent record of them. This goes to your producing versus transmitting purpose? Well, it does go to that. It does go to my point three. However, when Your Honor was phrasing questions to me a moment ago, you were saying he asked her to send him a picture. And I want to be clear, that's not what he was doing. Well, live on Skype.  He was Skype, right? That's it. It's just live on Skype. And how does that – just remind me analytically what's the flaw in the government's prosecution if that's true, if everything was happening live on Skype? It's only with respect to point three in my brief. Which is that it doesn't constitute production. It only constitutes transmission? Correct. Because that's what the statute says. The statute distinguishes. Production requires a permanent record so that you don't produce child pornography if you're transmitting it live. That's my contention. Or else why would Congress have to – How do you deal with a Seventh Circuit case which says on an identical question that that isn't plain error? That is what? That that isn't plain error. Is that in the government's brief? So I don't – I know Your Honor doesn't like Ninth Circuit cases. Yeah, no. I feel differently. I see about Seventh Circuit. I don't recall that being in the – I don't recall that being in the brief, so I'm not prepared to address it. I'm sorry. I'm sorry. But there is a Seventh Circuit case. I'll try to get – read from my notes here its name because I write so legibly that I can't ever read it again.  Arnold Ward, Seventh Circuit, in which they had exactly this issue, and they said this is a change, but it doesn't under the circumstances constitute plain error. I guess my answer would be, Judge, I know that I cited cases which says under the third prong of plain error, it's a violation of the Grand Jury Clause is automatic. There's no – in other words, the prejudice prong of plain error is satisfied under this Court's precedent on a constructive amendment case simply by virtue of the violation of the Grand Jury Clause. And the cases that I cited are Bastian and Thomas. Hang on. So you're saying constructive amendment claims always satisfy the third prong of plain error analysis? I did make that argument in my brief, yes. Well, there is – that would be a conflict with a direct opinion in the Seventh Circuit. Okay. Well, I think we have your argument. We will hear from you again for two minutes of rebuttal. Don't go away. Why don't we hear from the government? Thank you. Before you begin, let me just say I have a great deal of trouble with respect to Jane Doe 1 and Venue because I don't see this continuous crime. I see one specific thing and any grooming. Assuming all the evidence, circumstantial evidence, of his being there is sufficient, it still seems to me exposed. With respect to Jane Doe 1, with respect to Jane Doe 2, there are all these counts. So could you address that for me? Yes. Good morning, Your Honor. May it please the Court. Shane Edwards Balfour on behalf of the government and I represent the government in the district court as well. I hear your question with respect to Jane Doe 1. These crimes take time. So from the moment this defendant met or interacted with Jane Doe 1, they started on a website called Omegle. And then they gradually went to Skype and they talked for an extended period of time. The entire time, the defendant's sole focus was trying to get sexually explicit images and videos from Jane Doe 1. So it's her contention that these conversations on the pre-Skype device were continuous? Yes. These conversations were continuous. This crime happened over an extended period of time. It wasn't just the time where he met her once and then this crime occurred. This happened over the time in the context of their conversations matter. Every single time the defendant went to interact with Jane Doe 1, it wasn't to be her friend. This wasn't an individual that was trying to befriend this minor victim. This was someone whose purpose in each interaction was to further his desire to get these sexually explicit images and videos from Jane Doe 1. And as Your Honor said earlier, one of the conversations with Jane Doe 2 indicated during the time period in which we charged for Jane Doe 1, the defendant said, I'm home. And that's in March 2017. That is correct. And that's what he says to Jane Doe 2. So that way we know that during the period, the charge period for Jane Doe 1, he was in Staten Island. Or at least the jury could so infer by preponderance of the evidence. That's correct, Your Honor. And that's the time when he says, hey, are you home? And she doesn't respond, right? Something like that, right? That's the time when Jane Doe 2 asked, have they shipped you off yet? No, I apologize. Now that we know, right, Jane Doe 2 has an exchange where he says, I'm home. But that's also the period in March 2017 when he writes to Jane Doe 1 and he says, hey, how are you doing? Or what's out there? And she doesn't respond. So your argument, at least with respect to that date, would depend in part on whether a seemingly innocuous statement by Martinez, hey, are you home or how are you doing, in context would be reasonably understood by the jury as part of the grooming, part of the buildup that if she had written back, he would have said, you know, That's correct, Your Honor. I believe those statements that he made where he actually said, hi, hon, and how are you doing, those were in furtherance of what his desire was, right? And that's consistent with all of his past conversations where he doesn't just sign on and say, take your clothes off. He signs on, starts talking to her, and starts building up to his request by building this rapport of faux friendship, and then he pounces. That's correct, Your Honor. The context of what you said matters. I have to say that this was a continuous offense, that the time he actually got something from her was not a separate offense from what he was doing later. And, you know, my problem is that in almost all of these grooming cases, some grooming related to venue occurred before we have an actual sending of something. Well, here, we don't have that, and we have to say, having gotten that, that is still covered by all the things that come after. And that, I have a little, you know, a person can commit a series of different offenses, and indeed, were he being charged with different offenses and given different penalties, we would probably uphold them. So to answer your point there, Your Honor, context matters. Every single conversation he had with this Jane Doe number one was for that specific purpose. So even those last communications, he still had this idea. And the government did charge attempt. The jury was instructed on attempt. Yeah. Could you go to that? Because I see, I think we all agree now, we've looked at 827. Yes. And the indictment seems to clearly allege attempt as to counts one and two. I didn't have this at the ready. I'm looking in the jury instructions. I'm trying to find attempt. I see instructions on attempt with regard to, oh, gosh, is it counts three and four, receipt and attempted receipt. Did the court instruct the jury as to intent on counts one and two? The court did. And on the verdict sheet, they had the option of first deciding whether or not they found that the defendant was guilty of the substantive crime. And if they did, the court told them they did not have to find on attempt. They just skipped to the next question. And can you just help us out a little bit? I would hope that you might have these page numbers at hand for the appendix. Can you just direct us to the verdict sheet? That might be helpful. Verdict sheet. Give me one second. I can maybe find it myself. I'm going to have to. A1340. A1340. A1340. I'm going to come back to this. The jury, because they found him guilty of the substantive crime, did not decide attempt. That's what you told me. They did not on the jury in their verdict. They did not. They did not decide attempt. So it is perfectly possible that they found him guilty with respect to Jane Doe I of the substantive crime that occurred before there was any evidence of his being in Staten Island. And they never found him guilty of attempt during the time when he was in Staten Island. There was evidence that he was. And that's my venue problem. Again, it doesn't apply to Jane Doe II because all that was going on. But as to Jane Doe I, given that they found him guilty of the substantive crime and not of the attempt, I don't see where you have evidence that at the time of what they found him guilty of, he was in Staten Island. So could you clarify that for me?  I'll clarify that for you right now, Your Honor. And this Court can find, for the lesser included, of attempt because the evidence was there and those communications were during, in March, the defendant says to Jane Doe I, hi, hon, how are you doing? Looking at the context of their full communications with the — was actually also of attempt. See, the Court says it doesn't matter because it wasn't worrying about venue. And, of course, it doesn't matter if we're not worrying about venue. But if we're worrying about venue, you're saying this is a lesser included offense. Well, it may be, but was a lesser included offense found or are we doing it simply to find venue? And, you know, I hate venue, but it's there. Well, the evidence shows that those communications happened in March when the defendant said he was home. And if you're looking at it in context, right, an example is this is not a parent watching their child at a playground. This is a pedophile at a playground that has a different context. How much of a difference does it make, and this will be also to the other part, because we have Jane Doe I and Jane Doe II, and the same sentences with each of them. If we were to say no venue with respect to Jane Doe I, but it can be tried again, of course, it's not double jeopardy, but venue with respect to Jane Doe II, how much difference does it make? Difference does it make with respect to his sentence? Yeah. It's the same sentence, Your Honor. Because it's all relevant conduct? Because both of them have the same. Because even if you threw out one, hypothetically, if you threw out Jane I but you kept Jane II, Jane I would still be relevant conduct. That's correct. For sentencing purposes under the guidelines. That's correct. But do we then have to say it has to be a new sentence, or can we just affirm? You would affirm because he got the mandatory minimum under Count II, which is 15 years. No, no, no. I mean, if we had to throw out Count I for venue, then we'd have to throw out the sentence on I, even if it was concurrent for the same amount of time. If you threw out Count for I, yes. Yeah, I mean, hypothetically, if Count I were invalid, we can't just affirm. I mean, we would have to vacate the conviction on Count I, but we could affirm the sentence and judgment and conviction on Count II. That's correct. Yeah, okay. We wouldn't have to send it back for resentencing simply because we had thrown out the sentence on Count I. That is correct. So apologies if I'm belaboring this point, but I'm trying to think through analytically the May 2017 contact with Jane Doe I. I can clearly see how his communication with Jane Doe I in March of 2017 certainly would be easily attempt. Would it also constitute part of a continuing offense of a completed substantive offense, not an attempt? Attempted violation of a completed substantive violation of the sexual exploitation? The evidence showed it could because every— Walk me through that.  So every action this defendant took was for the stated purpose of getting these depictions sent to him by these victims. So when he was speaking with Jane Doe I, every single time, it wasn't really just when she told him, I have these memory issues and I'm a vulnerable victim, and he responded by asking her to send her images. Right? Every single response and every single time he spoke with her, she had this one purpose in mind and it was his way of persuading. Well, but let's forget for the moment what happened before Miss Staten Island, and he's doing these things, talking to her. He would then be guilty of attempt if they found him so, but could we say he was guilty of the substantive crime if she didn't send him anything and all he did was tell her to do that? Because you're saying he was guilty of a substantive crime and that's what the jury found him. But my problem is he's in Staten Island. Now, forget the first. He's in Staten Island. He's grooming her, attempting, attempting, attempting, but we have no verdict on attempting. Can we say that a verdict of substantive then would have evidence? With respect to Jane Doe No. 1? Yes, yes. I would argue we still could because part of what happened is— But what is the transmission, which is what he is being charged for production ever, of which there is evidence solely from that grooming during the time he's in Staten Island? He's trying. Now, you know, somebody calls up and tries to get something, he's guilty of attempt, but she doesn't send anything, so what's the substantive crime? So if you even look at the case U.S. v. Thompson, it talks about how over the course of many months these different contexts in which the defendant— But that's all ahead of time. Let me maybe reframe it slightly, and I don't know the answer to this. What is the actus reus as opposed to what is the mens rea? Is it the case that the actus reus is the enticing, persuading, inducing, in other words, the statements that he makes to the juvenile, all these things, which can be veiled, can be explicit, whatever, but as long as the jury finds that there is the inducing, persuading, and everything, is that the only actus reus, and does the transmission have to happen, or is that merely part of his mens rea, knowing that they would be transmitted? And I don't know if that's the correct framing of the issue. Obviously, the purpose is the mens rea, and is the transmission also something that need only be satisfied for a completed crime? And in terms of the mens rea, or must it—is that also part of the actus reus, that the transmission must happen? But if the jury could conclude that, hey, how are you doing, honey, in context, was, in fact, enticement, is it enough to say that he then knew that the result would be X, Y, Z, or having reason to know that the result would be, hypothetically, X, Y, Z, and would that be different from, say, an attempt, would be, I'll make it up. Let's say he logs on to Skype. He sends this message, but it turns out his Wi-Fi was down, and the message is never sent. So he never, in fact, persuades, entices, induces. So it is a failed effort at sending a message out, and that would be an attempt. I don't know that I'm framing it properly at all, but I'm interested in your opinion. Yeah, and can you give us a case that says that? So I believe what you're asking is about whether or not the production had to occur for the crime to occur. Exactly. Or more to the point of transmission. Transmission, yeah. So I believe the, yes, so the production had to occur, not necessarily the transmission, because the crime is that he induced this victim, right, induced, persuaded this victim to produce this specially explicit image. So production has to happen, in your view, for a consummation of a completed crime. For the completed crime, yes, but not necessarily for the attempt. Okay. Well, that's fine. Thank you. Thank you very much. Thank you, Your Honor. While we hear, Mr. Freifeld, you have a couple of minutes to spend as you deem most wise. May I just say, assuming that you followed me about Count Jane Doe 1 and Jane Doe 2, does it make any difference? Yes, it does. If the court affirms, if the court reverses on Count 1 and affirms on Count 2, the court must still remand for resentencing, because my client did not receive the minimum sentence on Count 4. And according to this Court's jurisprudence, it only declines to send it back for resentencing where one count is reversed if the defendant received the minimum term on all of the counts. So our default rule is de novo resentencing, you're saying? Yes. Yes, unless the defendant received the minimum sentence on all of the counts. Because if they were all mandatory minimums, it would be a moot point. Yes. Okay. That's what I needed to know. Sorry. I can't emphasize enough that there's no evidence on, with respect to Jane Doe 2, that my client lived in Staten Island at the time that his interactions with her occurred. It appears that before I stood up, the court had been under the impression, or the court assumed that because the defense witness said that my client, that he visited my client in Staten Island, therefore that tied Jane Doe 2's testimony, that they spoke every month together within the period charged in the indictment. But it's not true, because my client lived at this address in Bay Terrace for two years after the end of any of the periods in the indictment. And there's nothing to show that all of those visits weren't during those two years. In fact, it's likely that those visits were during that two-year period following the end of the period charged in the indictment, because during the period charged in the indictment, he was in Germany, he was in Texas, he was in Romania. So I think that it's unfair to say that there's sufficient evidence for Jane Doe 2, with respect to venue, because another witness testified that he visited my client in Staten Island. Thank you. Well, thank you both very much. Very helpful oral arguments on both sides. We appreciate it very much. We will take the case under advisement.